**SO ORDERED: February 10, 2012.**



*[signature]*

**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FRIONA INDUSTRIES, L.P., *et al*, | ) | Adv. Pro. No. 11-59093 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on the motion for partial summary judgment [Doc. 248] filed by James A. Knauer, the chapter 11 trustee ("Trustee"), who asks the Court to dispose summarily of certain arguments made by unpaid cattle sellers who are defendants in this adversary proceeding. The matter has been briefed extensively, with several creditors of the

Debtor, Eastern Livestock Co., LLC ("Eastern"), voicing their support or opposition.[1] For the reasons set forth herein, the Court now **GRANTS** the Trustee's motion and enters summary judgment foreclosing claims based on the proposition that any unpaid seller of cattle has a constructive trust or similar equitable interest derived from common law, and **DEFERS** consideration of the motion insofar as it asks the Court to classify Eastern under the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181-229b (the "PSA").

I.   Background

Eastern and Thomas P. Gibson, one of its principals who often traded on his own account, were two of the largest participants in the American cattle markets, doing business in more than a dozen states. Though Eastern was active at other points in the supply chain and in other capacities, its primary business was the buying and selling of immature cattle. Though Eastern is frequently referred to in these proceedings as a broker, it typically purchased relatively small lots of dozens or hundreds of cattle from ranchers, taking title to but often not possession of its cattle. Eastern then consolidated those lots into larger groups, and sold the aggregate lots to feedlots to be raised until fit for slaughter. Eastern transacted business in great volume, frequently buying and selling cattle the same day and paying for its purchases by paper check.

Many facts are still unclear, but some perceived impropriety in Eastern's affairs[2] led Eastern's major secured creditor, Fifth Third Bank ("Fifth Third") to close Eastern's credit

---

[1] The issues addressed by this order encompass a question that has been put to the Court for ruling in the claims process in the Debtor's case-in-chief. The Court has considered the legal arguments raised in that contested matter along with the submissions of the parties in this adversary proceeding.

[2] Consistently, the parties to the Eastern proceedings have referred to the activities of Eastern and its principals as a "check kite." Mr. Gibson and other principals of Eastern have been indicted on criminal charges. Among them, they face pending felony charges of mail fraud in the United States District Court for the Western District of Kentucky and theft and criminal syndication in the Metcalfe, Kentucky, Circuit Court. The United States accuses Mr. Gibson and an associate of defrauding Fifth Third Bank. The Commonwealth of Kentucky accuses Mr. Gibson and others of stealing from dozens of individuals and companies.

2

facility and dishonor its outstanding checks on or about November 2, 2010.  Several hundred sellers of cattle were left unpaid, many of whom had relatively small operations and whose sales to Eastern constituted a significant proportion of their annual production.  Others who had provided goods and services to Eastern were left holding dishonored checks.  Auction houses that guaranteed Eastern's purchases were forced to make good on Eastern's obligations to sellers from transactions they brokered in exchange for assignments of the sellers' rights.

As the objecting defendants are entitled to all reasonable inferences in their favor, the Court assumes for the purposes of the Trustee's motion that they were defrauded by Eastern inasmuch as they were induced to part with their cattle in exchange for checks that Eastern knew would be dishonored *if and when* Fifth Third learned it was being defrauded by Eastern.  The objecting defendants certainly were defrauded according to the definition of fraud employed by the Uniform Commercial Code, which "takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller."  UCC § 2-702 cmt. 2.[3]  None of the objecting defendants plausibly suggests that it was victimized differently than any of the other creditors whom Eastern came to owe in the first days of November 2010, with the exception of Fifth Third, whose circumstances are unique.  Rather, these defendants have pleaded, and the Court assumes, that, at the time of the transactions at issue, Eastern was engaged in fraud, the same fraud it had perpetrated for many months and possibly years, during which time it transacted for billions of dollars with cattle sellers who concluded their dealings with Eastern

---

[3] Under the UCC, "'insolvent' means:
    (A) having generally ceased to pay debts in the ordinary course of business other than as a result of bona fide dispute;
    (B) being unable to pay debts as they become due; or
    (C) being insolvent within the meaning of federal bankruptcy law."
UCC § 1-201(b)(23).

unharmed. The Court assumes that Eastern knew that its checks would be dishonored and their holders unpaid if it were ever called to account. However, no one has plausibly suggested that Eastern knew *when and which* checks would be dishonored, and the non-moving defendants are not entitled to an inference that Eastern knew the specific checks it transferred to them would not clear.

Soon after Fifth Third refused to honor Eastern's checks, several of Eastern's largest customers, wary of claims that might have been brought against them by unpaid sellers, lenders, truckers, and others, interpleaded funds they owed Eastern into state and federal courts across the country. The instant adversary proceeding (the "Texas Interpleader") is one such case. It began in November 2010 as an action in the United States District Court for the Northern District of Texas, Amarillo Division. The plaintiffs therein, Friona Industries, L.P. ("Friona"), Cactus Growers, Inc. ("Cactus"), and J&F Oklahoma Holdings, Inc. ("J&F," and together with Friona and Cactus, the "Feedlots"),[4] paid into the district court $2,909,371.63, $1,767,599.37, and 2,560,839.06, respectively (collectively, the "Interpleaded Funds"). In their complaints, as amended [Docs. 30, 33, and 34], the Feedlots named approximately fifty Defendants whom they suspected may have an interest in the Interpleaded Funds, as well as Eastern. Soon thereafter, on December 6, 2010, three of Eastern's creditors filed an involuntary petition in this Court against Eastern under chapter 11 of the Bankruptcy Code. In the spring of 2011, the related interpleader cases and associated funds, including the Texas Interpleader and the Interpleaded Funds, made their way to this Court.

Two arguments underpin some of the counterclaims and crossclaims of the defendants,

---

[4] Strictly speaking, Friona, the first of the Feedlots to interplead funds, is the plaintiff in the Texas Interpleader, while Cactus and J&F are intervenors. For convenience, and on account of their similar positions, the Court refers to all three Feedlots as plaintiffs. Similarly, the Court refers to third-party defendants sued by Cactus and J&F simply as defendants.

who seek an award of some of the Interpleaded Funds. First, several defendants argue that particular portions of the Interpleaded Funds are subject to constructive trusts or the like arising under the laws of various states. Second, several defendants maintain that particular portions of the Interpleaded Funds are subject to statutory trusts in their favor arising under the PSA and related regulations. No defendant has indicated that it obtained a prepetition judgment based on any such argument.

Shortly after the pleadings closed, the Trustee moved for summary judgment with respect to the above two lien theories, seeking a ruling that the Interpleaded Funds are not subject to any statutory or constructive trust as a matter of law. Further, the Trustee's motion seeks to establish, contrary to the assertions of several defendants, that no party has stated a claim that Eastern acted as a "clearing agent," as that term is used in the regulations and case law concerning the PSA.

## II.     Standard of Review

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law. Fed. R. Civ. P. 56(a); *see Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5

242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), or that it cannot present facts essential to its position because, for example, it has had inadequate opportunity for discovery, the court may defer consideration of the motion or deny it, Fed. R. Civ. P. 56(d); *Celotex*, 477 U.S. at 325.

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

### III.   The Court Will Not Entertain Claims to a Constructive Trust or Similar Equitable Interest in These Circumstances

Several defendants have asserted claims to the Interpleaded Funds on the grounds that discrete and identifiable portions thereof are proceeds of the cattle they sold to Eastern (or, as some would have it, proceeds of cattle sales that Eastern brokered and cleared) in fraudulent transactions.  All such defendants are unpaid sellers of cattle or their assignees and subrogees. Under the common law of one or another state, say these defendants, Eastern's fraud resulted in it taking legal but not equitable title to the cattle and their proceeds, with the defendant sellers retaining the beneficial interests.  As the Feedlots paid the funds into court rather than to Eastern, the defendants argue that their equitable interests extend to the portions of the Interpleaded Funds that are identifiable proceeds of the cattle they sold Eastern.

If Eastern never had an equitable interest in the funds, it follows that they cannot be

6

brought into Eastern's bankruptcy estate under § 541(a),[5] and that the Trustee's claims to the Interpleaded Funds are limited. This is because of § 541(d), which provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" is not property of a bankruptcy estate "to the extent of any equitable interest in such property that the debtor does not hold."[6] *See United States v. Whiting Pools*, 462 U.S. 198, 204 n. 8 (1983) (explaining that a bankruptcy estate does not include "property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title"); *Marrs-Winn Co. v. Giberson Electric*, 103 F.3d 584, 589 (7th Cir. 1996) ("It is a well-settled principle that debtors do not own an equitable interest in property that they hold in trust for another, and thus, those trust funds are not 'property of the estate.'").

The Trustee emphasizes, however, that § 541(d) only excludes from the estate property in which a debtor does not have an equitable interest "*as of the commencement of the case*." As none of the parties obtained a prepetition judgment for a constructive trust, there was no division of legal and equitable title when Eastern's creditors petitioned for bankruptcy relief. The Trustee asserts that whether or not state law would require a court to consider imposing a constructive trust outside of bankruptcy is irrelevant, because a constructive trust is merely an equitable remedy and not a property interest. Such a remedy, according to the Trustee, has no place in most bankruptcies, where the estate is inadequate to repay all creditors in full, as it would take from a debtor's other creditors rather than from the party that committed the fraud. Further, the

---

[5] Unless otherwise indicated, all statutory citations are to Title 11 of the United States Code (the "Bankruptcy Code").

[6] The full text of § 541(d) is as follows:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

7

Trustee argues that the Bankruptcy Code is a comprehensive federal scheme that, while respecting property interests created by state law, preempts state-law remedies that conflict with its provisions.

Alternatively, the Trustee insists that even if the Court is unwilling to reject the imposition or recognition of a constructive trust in all cases, it should do so here because no state's law allows a constructive trust in favor of a defrauded seller of goods. Even if the Bankruptcy Code does not preempt such equitable remedies, state law itself supersedes them, as the Uniform Commercial Code adopted by the states provides exclusive rights and remedies for an unpaid seller of goods.

The Seventh Circuit has not been faced squarely with the issue. The Court is left to consider its dicta and persuasive precedent from other jurisdictions, whose holdings and rationales feature a variety of approaches.

**A.  Constructive Trusts Are Inappropriate in This Bankruptcy, As They Are in Most**

The propriety in bankruptcy of constructive trusts based on common law[7] has long been disputed, sometimes heatedly. *See, e.g.*, *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994) (expressing the view that "[c]onstructive trusts are anathema to the equities of bankruptcy"). The "tension existing between the exclusive nature of constructive trust rights and the bankruptcy policy favoring pro rata distribution among those holding similar rights," *CRS Steam, Inc. v. Eng'g Resources, Inc. (In re CRS Steam, Inc.)*, 225 B.R. 833, 835, has spawned "a contentious, contradictory, and expanding body of case law," *In re PKR, P.C.*, 220 B.R. 114, 117 (10th Cir. BAP 1998). The stakes are high, both for the creditors who, like the objecting defendants, hope to be paid in full and spared the fate of general

---

[7] It has long been settled that where a statute, *e.g.*, 26 U.S.C. § 7501 (the Internal Revenue Code's trust-fund tax provision), provides for the existence of a trust relationship, § 541(d) applies and the property held in trust is not property of a bankruptcy estate. *Begier v. IRS*, 496 U.S. 53, 59 (1990).

8

unsecured creditors, and for other creditors, who face prospect of seeking to recover from a smaller estate. Some have seen the constructive trust as an existential threat to bankruptcy law itself, because an expansive interpretation of such arguments can "wreak… havoc with the priority system ordained by the Bankruptcy Code," *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994).

The Seventh Circuit's guidance has been characterized as "not entirely consistent." *See Fibre Form Corp. v. Slamin (In re Nova Tool & Eng'g Co.)*, 228 B.R. 678, 683 (Bankr. N.D. Ind. 1998). On the one hand, in a case where the creditors did "not seriously pursue" the argument, the court suggested that constructive trusts have no place when a bankruptcy estate lacks funds to pay all claims:

> There could be a decent claim of unjust enrichment if we had to decide whether the [debtor's] stockholders or the [creditors claiming rights in a constructive trust] should get the money remaining in the [debtor's] coffers; it would unjustly enrich the stockholders to receive this money. But that is not the problem. The question is whether the [creditors claiming rights in a constructive trust] get all of the money and the [other creditors] none; or whether all creditors share the inadequate funds. The [other creditors] will not be 'unjustly enriched' if they receive 70% of their debts (without interest). All of the [] creditors have supplied valuable goods and services; all have been stiffed.

*Union Pac. R.R. Co. v. Moritz (Matter of Iowa R.R. Co)*, 840 F.2d 535, 545 (7th Cir. 1988). The language of *Iowa Railroad* seems authoritative. However, the facts are easily distinguished: the debtor was not engaged in fraud, but "put its hands on this money legitimately." *Id.* More importantly, this portion of its holding is arguably undercut by an opinion issued just a year later and, like *Iowa Railroad*, written by Chief Judge Easterbrook.

In *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.), *cert. denied sub nom. Belisle v. Anzivino*, 493 U.S. 893 (1989), a case concerning a debtor whose defrauded business partners claimed a constructive trust in property that was intended by their agreement with the debtor to be partnership property, the court assumed (without citation) that nonbankruptcy law (*viz.* the law of

9

the Virgin Islands) "impresses a constructive trust on the [property] and its fruits." *Id.* at 513. The court went on to observe that "[a] constructive trust ordinarily survives bankruptcy: the property may not be used to satisfy the debtor's obligations to other creditors, and the debts to the victims of the fraud may not be discharged." *Id.* The objecting defendants take this language to require bankruptcy courts to impose a constructive trust if state law would require a state court to do so.

However, *Belisle* does not turn on the propriety of a bankruptcy court imposing a constructive trust and excluding its *res* from the estate under § 541(d). The answer to that question was stipulated by the trustee. *Id*. The *Belisle* court assumed the existence of a constructive trust and further assumed that it was the sort of property interest contemplated by § 541(d), but held that the strong-arm powers provided to the Trustee by § 544(a) defeat its beneficiaries notwithstanding § 541(d).[8] The case's broad language approving of constructive trusts in bankruptcy is outside the scope of its holding. Elsewhere in its dicta, the Seventh Circuit has suggested its approval of the recognition of constructive trusts by bankruptcy courts. *See In re Barnes*, 276 F.3d 927, 929 (7th Cir. 2002) (concerning a judgment creditor who had filed a notice of lien prepetition); *Marrs-Winn*, 103 F.3d at 589 (concerning the enforceability of an express trust). The application of such statements far outside their factual contexts seems improper when they are considered next to the more detailed analysis to the contrary in *Iowa*

---

[8] While *Belisle* leaves the larger questions about constructive trusts in bankruptcy unanswered, its holding and the 1984 amendment of § 541 may limit the range of possible outcomes in the Texas Interpleader and in the case-in-chief. *Belisle* holds that the application of § 541(d) is "limited to inclusions in the estate under § 541(a)." *Id.* at 516. Section 541(d) was amended in 1984, after the Plunketts filed their bankruptcy petition, to substitute "under subsection (a)(1) or (2)" for "under subsection (a)," rendering § 541(d) inapplicable to § 541(a)(3) and (4), which cross-reference the trustee's strong-arm and other recovery powers. *Belisle* at 514; *see also Mullins v. Burtch (In re Paul J. Paradise & Assocs.)*, 249 B.R. 360, 366 n. 26 (D. Del. 2000). In other words, even if the objecting defendants' claims are the sort of equitable property interests protected by § 541(d), that status is irrelevant if the Trustee acts based on any of his powers deriving from authority other than § 541(a)(1) or (2). For the purposes of this motion, the Court assumes that the Trustee is acting only under the authority of § 541(a)(1) or (2).

10

*Railroad*.

In the absence of binding authority, cases from other courts offer a variety of approaches. The discussion begins with the Sixth Circuit, which has considered constructive trust law in the bankruptcy context more than any other, and which goes furthest in excluding constructive trusts from the consideration of bankruptcy courts. *Omegas*, the central precedent, involved a debtor who continued to accept down payments on new purchase orders after termination of payments to its exclusive supplier rendered it unable to fulfill those orders. 16 F.3d at 1446. Finding that the debtor defrauded the creditor who placed the orders, the bankruptcy court relied on Kentucky common law and § 541(d) to impose a constructive trust on down payments made to the debtor after it terminated payments to its supplier. *Id.* The Sixth Circuit reversed, holding that the bankruptcy court "erred in applying the law of constructive trust to this bankruptcy situation." *Id.* at 1445.

The root of the confusion about constructive trusts in bankruptcy, according to *Omegas*, is the conflation of property interests and remedies. "[A] constructive trust is not really a trust" of the sort protected by § 541(d), but is "a common-law remedy in equity that may only exist by the grace of judicial action." *Id*. at 1449. As a remedy, rather than a property interest, "it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust." *Id.* at 1451. Acknowledging that property rights in bankruptcy are determined by state law, *see Butner v. United States*, 440 U.S. 48, 54 (1979), the *Omegas* court observed that "[j]ust because something is so under state law does not necessarily make it so under the Bankruptcy Code," and concluded that once a debtor's interests are determined by state law, "'federal bankruptcy law dictates to what extent that interest is property of the estate.'" *Omegas*, 16 F.3d at 1450 (quoting *Bavely v.*

11

*IRS (In re Terwillinger's Catering Plus, Inc.)*, 911 F.2d 1168, 1172 (6th Cir. 1990)). Federal bankruptcy law provides vastly different remedies than nonbankruptcy law because "[t]he equities of bankruptcy are not the equities of common law." *Omegas*, 16 F.3d at 1452. Rather, "[t]he Code… makes maximization of the estate the primary concern and entitlement to shares of the estate secondary." *Id.* To impose a constructive trust on funds that would otherwise be part of the estate would "impermissibly subordinate this primary concern to a single claim of entitlement." *Id.* at 1453 (footnote omitted). Accordingly, the court held that "[u]nless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor." *Id.* at 1449 (footnote omitted).

Other courts, including two bankruptcy courts in the Seventh Circuit, have been persuaded by *Omegas*. Judge Grant's endorsement of the approach, following the discussion of constructive trusts in *Iowa Railroad*, emphasizes the "equitable origin and purpose of constructive trusts," *Nova Tool*, 228 B.R. at 681, and the inequitable result that would obtain if "[t]he only ones who would be deprived of anything will be debtor's other creditors," *Id.* at 685. Finding guidance in the Seventh Circuit's "antipathy toward recognizing equitable remedies which would diminish the bankruptcy estate," *Id.* at 683 (citing *Small v. Beverly Bank*, 936 F.2d 945, 949 (7th Cir. 1991) (observing that equitable liens are "the object of scorn" and contrary to bankruptcy policy)), he "concludes that the Seventh Circuit would follow *Omegas* when it is called upon to decide" the question, *Nova Tool*, 228 B.R. at 683. *Accord Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149 (Bankr. N.D. Ill 1995). The Court has not encountered any Seventh Circuit cases since *Nova Tool* and *Foos* that significantly alter the

12

binding precedent. Outside the Sixth and Seventh Circuits, *Omegas* was presaged and has been followed by many courts. *See, e.g*, *Torres v. Eastlick (In re North American Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.) ("[W]e cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust."), *opinion amended*, 774 F.2d 1390 (1985), *cert. denied*, 475 U.S. 1083 (1986); *Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61, 81-82 (Bankr. D.N.J. 1999); *Matter of Paul J. Paradise & Assocs., Inc.*, 217 B.R. 452 (Bankr. D. Del. 1997); *Matter of United Imports*, 203 B.R. 162 (Bankr. D. Neb. 1996); *In re Jeter*, 171 B.R. 1015 (Bankr. W.D. Mo. 1994), *aff'd*, 73 F.3d 205 (8th Cir. 1996). *Cf. CRS Steam*, 225 B.R. at 844 (rejecting the rationale of *Omegas* and nevertheless rejecting the application of § 541(d) to constructive trusts based on the Bankruptcy Code's definition of a "claim").

Since *Omegas*, the Sixth Circuit has reaffirmed and refined its core holding, identifying limited contexts where it is appropriate for a bankruptcy court to recognize or impose a constructive trust in the absence of a prepetition judgment.[9] The objecting defendants maintain that these holdings constitute a reconsideration of the core holding of *Omegas*. The Court disagrees.

Like *Omegas*'s Sixth Circuit progeny, the outcomes, if not the reasoning, of other cases allowing or requiring bankruptcy courts to apply the law of constructive trusts can be reconciled

---

[9] Where property sought to be impressed with a constructive trust is otherwise fully exempt from a debtor's bankruptcy estate, it is appropriate to "recogniz[e] a constructive trust under state law [because to do so] would not hinder bankruptcy policy inasmuch as it would not diminish the pro rata share of any other creditors of the debtor." *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 197 (6th Cir. 1996) (concerning a consumer debtor's retirement account). It may be appropriate for a bankruptcy court to impress a constructive trust on and exclude from the estate funds that were never intended to pass to the debtor. *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 930 (6th Cir. 2000) (further holding, at 931, that proceeds of embezzled funds are property of the estate). Where a state court has issued a series of prepetition judgments in litigation between the creditor and debtor concerning the same property, a bankruptcy court "may give effect" to the state court's postpetition order imposing a constructive trust. *Poss v. Morris (In re Morris)*, 260 F.3d 654, 669 (6th Cir. 2001).

13

with *Omegas* and distinguished from the facts of the instant case.[10] The Court does not take issue with these dispositions and does not consider this order to be in conflict with their holdings.

Even with the field cleared of distinguishable cases, there are many precedents that stand in opposition to *Omegas*. Most of these cases do not turn on whether a constructive trust is a remedy or a property interest. Rather, they assume a constructive trust is a property interest and, citing *Butner*, look to state common law to determine whether a constructive trust comes into existence when a judge declares it or whether it exists from the moment the fraudulent conduct giving rise to it takes place. Accordingly, in *City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.)*, 828 F.2d 699 (11th Cir. 1987), *cert. denied*, 485 U.S. 1007 (1988), the court excavates fifty years old precedents of the Florida Supreme Court to find "implicit[] recogni[tion]" that, under Florida law, "a constructive trust exists from the moment the fraudulent transaction giving rise to it takes place." *Id.* at 702. *See also, e.g.*, *Southmark Corp. v. Grosz*, 49 F.3d 1111, 1118 (5th Cir. 1995) (applying Texas law); *United States v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1450-51 (10th Cir. 1990) (Oklahoma law); *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93-94 (2d Cir. 1989) (New Jersey law); *In re W/B Assocs.*, 307 B.R. 476, 484-85 (Bankr. W.D. Pa. 2004) (Pennsylvania law); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 206 B.R.

---

[10] Where a statutory scheme requires an employer to withhold a portion of its employees' income from their wages but fails to designate specifically that such are trust-fund taxes, it is appropriate for a bankruptcy court to follow the state high court in reading a trust provision into the statute. *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994). Where a third party mistakenly deposits funds into the debtor's account rather than a creditor's, never intending for the debtor to receive the funds, the funds are not property of the bankruptcy estate. *Mitsui Mfgrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321 (9th Cir. 1994). Where a debtor is owed a child support arrearage and state law recognizes that "child support is a fundamental right for the benefit of the minor child," the right to payment is not property of the estate. *In re Poffenbarger*, 281 B.R. 379, 387-88 (Bankr. S.D. Ala. 2002). Where a state court renders a judgment prepetition but does not enter it on its docket until after the commencement of the bankruptcy case, the judgment should be recognized. *In re Aultman*, 223 B.R. 481, 483-84 (Bankr. W.D. Pa. 1998).

14

394, 400-01 (Bankr. E.D. Va. 1997) (Virginia law). Other approaches have been less tightly grounded in state law. *See Official Committee of Unsecured Creditors v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 997 F.2d 1039, 1055 (3d Cir. 1993) (finding authority for an implied trust in federal common law). Such an inquiry is, in the opinion of this Court, neither necessary nor appropriate here.

The Court considers the constructive trust, along with other equitable trusts and liens recognized by common law,[11] to be a remedy, and not the sort of "[p]roperty interest[] created and defined by state law" contemplated by *Butner v. United States*, 440 U.S. 48, 55 (1979).[12] The Bankruptcy Code is a comprehensive remedial scheme, and where, as here, its provisions[13]

---

[11] At least one defendant, CPC Livestock, LLC, attempts to distinguish its claim to a "resulting trust" from the scope of the Trustee's motion, arguing, based on Colorado law, that unlike constructive trusts, which are "fraud rectifying," resulting trusts are "intent-enforcing." *See Shepler v. Whalen*, 119 P.3d 1084 (Colo. 2005). The Trustee acquiesces to the exclusion of such a claim from the scope of its motion. The Trustee is too quick to concede a material distinction between the constructive trust and the sort of equitable interest claimed by CPC. Both are equitable remedies arguably cast as property interests by state common law. Courts sometimes use the terms interchangeably. *See Southmark*, 49 F.3d at 1115 (5th Cir. 1995); *Monfort, Inc. v. Kunkel (In re Morken)*, 182 B.R. 1007, 1022 (Bankr. D. Minn. 1995). Others recognize a distinction but find it to be immaterial in bankruptcy. *See Bakst v. Corzo (In re Corzo)*, 406 B.R. 154, 161-62 (Bankr. S.D. Fla. 2008). Still others find a critical distinction between the two when applying § 541(d). *See Golden Mortg. Fund # 14 v. Kennedy (In re Golden Triangle Capital, Inc.)*, 171 B.R. 79, 82 (9th Cir. BAP 1994). Understandably, given the disparate local histories of equitable remedies at state law, courts (and treatises) often use inconsistent nomenclature to describe constructive trusts, resulting trusts, and equitable liens. None is compatible with the Bankruptcy Code in this context, and this order forecloses CPC's claim to a resulting trust along with the objecting defendants' claims to constructive trusts.

[12] A review of the treatises is unavailing, with some emphasizing the remedial nature of the constructive trust and its differences from an express trust, *see, e.g.*, Herbert Thorndyke Tiffany, The Law of Property § 274 (3d ed. 1939); Restatement of Restitution § 160 cmt. A (1937), and others urging that the analogy be respected as if "[t]he rights and duties of the parties [] are the same as if an express trust had been created," Caryl A. Yzenbaard et al., The Law of Trusts and Trustees (3d ed. rev. 2011), because "[t]he preference that the constructive trust claimant acquires over general creditors of the defendant is usually the object of the remedy," Restatement (Third) of Restitution & Unjust Enrichment § 55 cmt. A (2011). *See CRS Steam*, 225 B.R. at 837-38, for a comparative discussion of the treatises.

[13] In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, § 1227(b), 119 Stat. 23, added § 503(b)(9), which affords administrative priority to the claim of a creditor who sold goods to a debtor within twenty days before the commencement of the debtor's bankruptcy case. A secured claim may be based upon a federal statute (see below). If neither of the preceding apply, a seller may make an unsecured claim. The claims process and a seller's right to reclamation in certain circumstances, *see* § 546(c), are the remedies allowed by the Bankruptcy Code.

15

conflict with remedies provided by state law, it preempts those state-law remedies. *See Omegas*, 16 F.3d at 1450 (concluding that "once [a] determination [of property rights under state law] is made, federal bankruptcy law dictates to what extent that interest is property of the estate"); *Unicom Computer*, 13 F.3d at 325 n. 6 (acknowledging that "state law must be the starting point in determining whether a constructive trust may arise in a federal bankruptcy case," but emphasizing that state law "must be applied in a manner not inconsistent with federal bankruptcy law"). The Supreme Court has counseled that "the equitable distribution of [] property among the debtor's creditors" is a "[c]ritical feature[] of every bankruptcy proceeding," *Central Va. Community College v. Katz*, 546 U.S. 356, 363-64 (2006), and that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). *See also Iowa Railroad*, 840 F.2d at 536 ("Justice in a bankruptcy case is decision according to law."). Nevertheless, equitable remedies like the constructive trust may have a limited place in bankruptcy; the Court will not seek to delineate their domain in dicta. Generally, though, the bankruptcy liquidation context "is fundamentally different" from the nonbankruptcy context. *In re First Central Financial Corp.*, 377 F.3d 209, 217 (2d Cir. 2004).

The terrain of this multijurisdictional case, with its transactions controlled by the laws of many states, is even less hospitable to the constructive trust than most bankruptcies.[14] The series of individualized inquiries the objecting defendants would have the Court conduct would involve consideration of the laws of many states and extensive discovery. At the conclusion of such an

---

[14] The Court has not encountered a reported case where a court addressed constructive trust claims based on the laws of multiple states. Even the remarkably similar facts faced by Judge Kressel in the proceedings concerning Spring Grove Livestock Exchange did not give rise to the prospect of disparate outcomes due to differences in state common law, since all of the claims to a constructive trust in those cases appear to have been based on Minnesota law. *See Kunkel v. Ries (In re Morken)*, 199 B.R. 940, 964-66 (Bankr. D. Minn. 1996); *Monfort, Inc. v. Kunkel*, 182 B.R. at 1021-23.

16

unwieldy process, it is likely that some sellers of cattle would be denied relief and relegated to the pool of unsecured creditors while other defendants would be made whole. Vastly disparate treatment would result even though the successful and unsuccessful defendants alike are victims of the same fraud and are otherwise similarly situated. Such an outcome is precisely what bankruptcy law is intended to avoid.

"The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States." *Butner*, 440 U.S. at 54-55 n. 9 (quoting *Sturges v. Crowninshield*, 17 U.S. 122 (1819)). Bankruptcy law is protective of its scheme of classifications and priorities, and courts are not permitted "to modify the operation of the priority statute at the same level at which Congress operated when it made its general judgment to establish the hierarchy of claims in the first place." *United States v. Noland*, 517 U.S. 535, 540 (1996). Rewriting the Bankruptcy Code's hierarchy of claims by preferring creditors whose transactions are controlled by the law of certain states at the expense of other creditors is precisely what the objecting defendants would have the Court do.

Certainly, the federal courts are bound by state courts' characterizations of their states' laws, and some state courts' descriptions of the constructive trust suggest that it is a property interest or an independent cause of action. To that extent, then, such property interests are, as envisioned by *Butner*, preempted in this case because a "federal interest," namely the integrity of the Bankruptcy Code's orderly distribution scheme, *see Begier v. IRS*, 496 U.S. 53, 58 (1990), "requires a different result." *See Butner*, 440 U.S. at 55. In a case like this, where creditors, each having provided value and each having been similarly wronged by a bad actor, are similarly situated, entitlement to the funds in the possession of the Trustee and Court should turn on the provisions of the Bankruptcy Code rather than on the traceability of proceeds and choice of law.

17

Some of the objecting creditors have argued that summary judgment on the constructive trust issue is premature because they have had insufficient opportunity to discover facts relating to the conduct of Fifth Third, which has asserted a large secured claim in the underlying case and tentatively stands at the front of the queue of creditors seeking to recover from Eastern's estate. The objecting creditors suspect that Fifth Third's dealings with Eastern and its other creditors were less than forthright. However, Fifth Third's conduct is immaterial to the disposition of the constructive trust issue, that being a question of law. If Fifth Third's secured position is to be challenged, it should be challenged within the confines of the Bankruptcy Code, in a proceeding to determine the priority of its claim. *See* § 510(c).

**B.     The Court Does Not Need to Determine Whether Constructive Trusts Are Available at State Law to Defrauded Sellers of Goods**

The Court's holding above renders it unnecessary to rule on the second of the Trustee's arguments against constructive trusts, that the only remedy available at state law[15] to an unpaid seller of goods other than reclamation is an action for damages. To be sure, several courts have held that the right of reclamation created by UCC § 2-702(2)[16] is, apart from an action for damages, the only remedy available at state law to a defrauded seller of goods. *See Kennett-Murray & Co. v. Pawnee Nat'l Bank*, 598 P.2d 274, 277 (Okla. Ct. App. 1979); *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.*, 179 S.E.2d 850, 853 (N.C. Ct. App. 1971); *United States v. Wyo. Nat'l Bank*, 505 F.2d 1064, 1068 (10th Cir. 1974); *R.J. Reynolds Tobacco Co. v.*

---

[15] Each of the states whose law controls a transaction at issue in the Texas Interpleader has adopted the relevant provisions of the UCC without material differences. *See* Uniform Commercial Code (ULA) § 2-702 and the annotations contained therein.

[16] UCC § 2-702(2) provides:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

18

*Eli Witt Co. (In re Eli Witt Co.)*, 12 B.R. 757, 761 (Bankr. M.D. Fla. 1981). These cases read the last sentence of UCC § 2-702(2), which provides that "[e]xcept as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay," to "preclude[] all of an unpaid credit seller's equitable remedies for fraud except reclamation," *Kennett-Murray*, 598 P.2d at 277. *See also* UCC § 2-401 (providing that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest"). The cases cited in rebuttal, *e.g.*, *Demming v. Underwood*, 943 N.E.2d 878 (Ind. Ct. App. 2011); *Mullen v. Cogdell*, 643 N.E.2d 390 (Ind. Ct. App. 1994), are inapposite because they do not concern transactions to which UCC Article 2 would apply in the first place. Whether or not equitable remedies are precluded by the UCC may not even be necessary to resolve whether a seller of goods may be the beneficiary of a constructive trust. *See In re Auto-Train Corp., Inc.*, 810 F.2d 270, 274 (D.C. Cir. 1987) (observing that "courts are generally unwilling to find that funds are held in trust for a commercial creditor"); *PKR, P.C.*, 220 B.R. at 118 (same).

Finally, UCC § 2-702(2) applies by its terms only to credit sales. Some courts have determined that transactions in which a seller received a check in exchange for its goods were credit transactions to which the provision applied notwithstanding the presumption that such are cash transactions. *See Monfort, Inc. v. Kunkel*, 182 B.R. at 1016; *see also Kennett-Murray*, 598 P.2d at 276 (concerning transactions by draft payable on demand). But these courts reached this conclusion only based on the particular circumstances of the transactions at issue. Without considering the facts of each transaction, which is not possible at this juncture in the case, this Court would not be in a position to determine the cash or credit nature of particular transactions.

19

**IV.    A Ruling on Eastern's Status under the PSA Would Be Premature**

In addition to the possibility of claims to constructive trusts and other equitable interests, the Trustee asks the Court to for two rulings concerning the application of the PSA to Eastern. First, the Trustee seeks a determination that no defendant may state a claim to a trust under the PSA.  Second, the Trustee maintains that no party has shown evidence to support its allegation that Eastern acted as a "clearing agent" in any of the transactions at issue, and asks the Court to reject any arguments based on the proposition that Eastern acted in that capacity.  Some of the objecting defendants rejoin that they have had insufficient opportunity to discover evidence from the Trustee, and insist that a ruling would therefore be premature.

The capacity in which Eastern acted in particular transactions is factually sensitive. Potentially relevant documents are still being produced.  The objecting defendants are entitled to conduct additional discovery before being required to designate evidence to defeat such a fact-sensitive motion for summary judgment.  Accordingly, the Court defers ruling on the motion pursuant to Fed. R. Civ. P. 56(d).  The objecting defendants shall have ninety (90) days from the date this order is entered on the docket to submit designations of evidence and additional briefs in opposition to the portions of the Trustee's motion concerning the classification of Eastern under the PSA.

IT IS SO ORDERED.

###