SO ORDERED: June 17, 2013.



**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: ) | |
| EASTERN LIVESTOCK CO., LLC, ) | Case No. 10-93904-BHL-11 |
|         Debtor ) | |
| _____) | |
| FRIONA INDUSTRIES, LP, ) | |
|         Plaintiff, ) | |
| v. ) | Adv. No. 11-59093 |
| ) | |
| EASTERN LIVESTOCK CO., LLC, et al, ) | |
|         Defendants. ) | |
|   and ) | |
| ) | |
| CACTUS GROWERS, INC., ) | |
|         Intervenor, ) | |
|   and ) | |
| ) | |
| J & F OKLAHOMA HOLDINGS, INC., ) | |
|         Intervenor, ) | |
| v. ) | |
| ) | |
| EASTERN LIVESTOCK CO, et al, ) | |
|         Defendants. ) | |
| _____) | |

**ORDER DENYING TRUSTEE'S MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING STATUTORY TRUST**

The Trustee's Motion for Partial Summary Judgment concerning Statutory Trusts, Constructive Trusts, and Clearing Agency Issues was filed on October 24, 2011 [Docket # 248]. The Trustee's Motion is currently before the Court only as to the statutory trust issue. Responses in opposition to the Trustee's argument on that issue were filed by CPC Livestock ("CPC") and Bluegrass Livestock and other Cattle Producers ("Bluegrass Entities") (hereinafter collectively referred to as "Objecting Parties"). The pleadings concluded with the Trustee's Combined Supplemental Reply Brief in support of his motion on November 15, 2012.

Factual Background

The facts giving rise to the underlying bankruptcy proceeding have been set forth, in substantial detail, in the Court's prior Orders in this and related proceedings. Briefly, the Debtor, Eastern Livestock Co., LLC ("Eastern") and its principal, Thomas P. Gibson ("Gibson") were two of the largest participants in the American cattle market just prior to the bankruptcy filing, doing business in more than a dozen states. Eastern was in the business of buying and selling cattle, acquiring cattle from various sources and reselling that cattle for profit to end users and purchasers such as Friona Industries, L.P. ("Friona") and Cactus Growers, Inc. ("Cactus") (collectively referred to as "Buyers"). In acquiring cattle, Eastern either purchased the cattle through livestock auctions or from individual suppliers. Prior to the bankruptcy filing, Eastern had entered into several agreements for the sale of cattle to Buyers. In early November 2010, the Buyers became aware of active rumors in the industry that Eastern was in financial difficulty. On or about November 4, 2010, the Buyers were informed by Gibson that Fifth Third Bank had frozen all of Eastern's bank accounts. Beginning on that date and subsequent thereto, the Buyers were contacted by numerous parties who

claimed to have sold cattle to Eastern and not been paid ("Sellers"). When those Sellers began seeking payment from the Buyers directly, claiming that the cattle was delivered to a Buyer-owned feedyard facility, the Buyers interpleaded the contested monies for a resolution of competing interests, naming Eastern and the Sellers as defendants in that proceeding.

## Procedural Background and Jurisdiction

The underlying adversary proceeding was originally commenced on November 11, 2010, by Friona against Eastern *et al*, as a statutory interpleader action in the Northern District Court of Texas, Amarillo Division ("Interpleader Action"). Thereafter, Cactus and J&F Oklahoma Holdings, Inc. intervened in the Interpleader Action, each filing a separate Complaint in the Nature of an Interpleader. After an involuntary bankruptcy proceeding was commenced against Eastern on December 6, 2010, the Interpleader Plaintiffs sought removal of the Interpleader Action to the bankruptcy court and it ultimately came before this Court for a determination.

On October 24, 2011, the Trustee filed his Motion for Partial Summary Judgment seeking a ruling that (a) the interpleaded funds are not subject to a statutory trust under the Packers & Stockyard Act ("PSA"); (b) the funds are not subject to a constructive trust; and (c) Eastern did not act as a clearing agent in the transactions in issue in this interpleader. The Court granted partial summary judgment as to the constructive trust issue on February 10, 2012, and extended the briefing period for six months on the statutory trust issue to enable the Objecting Parties an opportunity to conduct further discovery on that issue. The matter was fully briefed on November 15, 2012.

## Standard of Review

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d

832, 836 (7th Cir. 1994). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

## Discussion

Eastern was a dominant force in the cattle industry for many years and was involved in hundreds of transactions across the nation in the days and weeks prior to the bankruptcy filing. At issue in this proceeding is a discreet segment of Eastern's cattle transactions. It is those particular transactions which give rise to the parties respective claims to the Interpleaded Funds. While the parties have advanced various theories in support of their claims, for purposes of the instant motion, the Court is asked to consider whether a statutory trust was created in favor of the Objecting Parties

by virtue of the Packers & Stockyards Act.

The Packers & Stockyards Act of 1921, 7 U.S.C. §§ 181 *et seq.*, and related regulations ("PSA") is comprehensive remedial legislation which regulates the cattle industry. The regulations contain directives and requirements governing all those involved in the industry depending upon the capacity of the person involved, whether acting as a "packer," "dealer," "market agency selling on commission," or "market agency buying on commission." Only payments that a livestock buyer makes to a *market agency selling on commission* or proceeds held by a *packer* may be considered "trust funds" under the PSA. 9 C.F.R. § 201.42(a); 7 U.S.C.A. § 196(b). Inasmuch as the parties concede that Eastern never acted as a packer, the question before the Court is whether Eastern acted as a market agency selling on commission in these transactions.

Although the statute does not specifically define a "market agency selling on commission", a "market agency" is generally defined as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services," 7 U.S.C.A. § 201(c). The attendant regulations further provide that "[e]very market agency engaged in the business of selling livestock on a commission or agency basis shall sell the livestock consigned to it openly, at the highest available bid, and in such a manner as to best promote the interest of each consignor."[1] That language, the Trustee contends, supports his argument that Eastern did not act as a commission merchant since Eastern sold cattle to specific buyers and did not sell cattle to the highest bidders. Because that regulation serves as a guideline to protect sellers against unfair or deceptive practices and not to define a market agency selling on commission, however, the Trustee's argument is without merit.

---

[1] 9 C.F.R. § 201.56(a).

5

The Court acknowledged, in a separate ruling on February 10, 2012, that the capacity in which Eastern acted in particular transactions was factually sensitive and thus deferred ruling on Eastern's status under the PSA in order to allow the parties to "conduct additional discovery before being required to designate evidence to defeat such a fact-sensitive motion for summary judgment." Having been granted an additional six months for discovery on that issue, the Objecting Parties have now filed Supplemental Memoranda and Affidavits in opposition to the Trustee's Motion for Partial Summary Judgment.

The Objecting Parties assert that there is a genuine issue of material fact in dispute, specifically being the capacity in which Eastern acted in these transactions, which precludes summary judgment on this issue. They allege that Eastern regularly acted as dealer and would intermittently buy for itself and resell, buy on commission for others, as well as provide "clearing services" for others in exchange for a clearing fee. Specifically, the Bluegrass Entities produced the affidavit of Willie Downs, employee of Eastern for 37 years and manager for Eastern's Branch 15 located in Lexington, Kentucky. Although the Trustee contends that Downs does not implicate the specific transactions involving the Interpleaded Funds, Downs does speak to the broader nature of Eastern's operations, as in Paragraph 7 of his Affidavit wherein he states:

> It is my understanding that Eastern intended to charge a commission on every head of cattle it ever bought or sold, even where Eastern's written books and records don't specifically indicate a 'commission' charge. To the best of my knowledge and belief, everything Eastern sold, it sold on commission, something like 50 cents per hundred weight or $1.00 per hundred weight. Although some of Eastern's customers requested that the charges for yardage, trucking, vet, commission, etc., be itemized on their bills, most did not require this level of detail, so Eastern would often lump everything – including commissions – into one line on the bill or into the overall pricing. On the bills of those customers who did require a breakdown of the sale charges, the various types of charges were clearly marked, but much of the commission charges are just included without specific detail.

6

In support of its supplemental pleading, CPC produced the Affidavit of Jimmie Celsor who states that Eastern bought cattle from CPC for Five Rivers Feedyard in Gilcrest, Colorado. While there is no evidence that CPC consigned those cattle to Eastern to sell on CPC's behalf or that CPC paid or agreed to pay Eastern a commission, it is Celsor's statement that "[i]n transactions from CPC Livestock, I understood Eastern was acting as CPC Livestock's broker or agent", that the Court finds compelling. Such statement may not reflect the reality of the relationship between CPC and Eastern but it reflects Celsor's understanding of that relationship. Like Downs, Celsor stated that Eastern typically earned a commission (between $.50 - $.75 per 100 wt.) when it bought cattle for resell to others.

The PSA was enacted to protect consignors of livestock from unfair, discriminatory, or deceptive actions but it does not protect market participants from every unjust action. In order to determine the respective rights of obligations of the parties to this dispute, it is incumbent upon the Court to ascertain the capacity in which Eastern acted. That analysis is problematic given that Eastern acted in various capacities both buying and selling cattle. But inasmuch as the determination may be made in light of the nature of the business relationship between the parties, *Syverson v. U. S. Dept. of Agriculture*, 601 F.3d 793 (8th Cir. 2010), the Court must look to evidence of the foregoing.

As noted hereinabove, CPC alleged that it understood that Eastern would act as CPC's agent to resell CPC cattle to Intervenor, J & F Oklahoma Holdings, Inc. and that Eastern would receive a commission on the transaction as its agent. The Bluegrass Entities complained that "it was difficult if not impossible to discern how Eastern acted in any given transaction" and cite an independent report obtained by Wells Fargo that concludes, in their words, "that Eastern acted in all kinds of

7

different manners too convoluted to discern."

Although the Bluegrass Entities question the Trustee's diligence in investigating Eastern's actions, it seems to the Court that all the parties have struggled to unwind the massive web of transactions that took place in the days preceding the bankruptcy filing. Ultimately, whether Eastern was acting as a dealer or in some other capacity is a factual determination and not one that this Court is not in a position to determine at the summary judgment stage. The Trustee's Motion for Partial Summary Judgment concerning Statutory Trusts is, therefore, **DENIED.**

**IT IS SO ORDERED.**

###